### PEOPLE v. DOWDALL.

1. PERJURY—PROOF—POSITIVENESS.

On a prosecution for perjury, the jury were warranted in finding that the respondent gave in police court the testimony on which the complaint was predicated, where a stenographer, called as a witness, swore that a certain transcript read in evidence, purporting to set forth such testimony, was made by him from notes taken at the police-court trial. and that he "believed" it to be correct.

2. SAME—MATERIALITY OF STATEMENTS.

Where, on a trial for rape, a witness had testified that the prosecutrix had contracted a venereal disease from respondent, it was material to show that the witness knew she had such disease before the alleged rape; and hence the witness, if testifying falsely upon this point, was guilty of perjury.

3. CRIMINAL LAW—APPEAL—CONDUCT OF PROSECUTING ATTORNEY.
The fact that the prosecuting attorney in his argument in a crim-
inal case used language in some particulars open to criticism
will not necessitate a reversal of conviction, where any dif-
ferent verdict, under the evidence, would have amounted to
a miscarriage of justice.

Error to recorder's court of Detroit; Chapin, J. Sub-
mitted May 1, 1900. Decided May 15, 1900.

Edward Dowdall was convicted of perjury, and sen-
tenced to imprisonment for seven years in the State prison
at Jackson. Affirmed.

*Frank C. Moriarty* and *George X. M. Collier*, for
appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *Henry A.
Mandell*, Assistant Prosecuting Attorney, for the people.

HOOKER, J. The defendant was convicted of perjury
alleged to have been committed upon an examination of
one Williams before a police justice of Detroit upon a
charge of rape. The information alleged that he testified
on that occasion that "he did not know whether or not
one Maggie Cooper, prior to February 19, 1899, had gon-
orrhea, and he had not prior to that date prescribed for
her, for that or any other venereal disease; that he, about
11 o'clock on the night of February 19, 1899, heard cries
from Maggie Cooper's room; that on going to the room
he found her sitting upon a lounge or sofa, crying; and
that she then told him that Dr. H. B. Williams had in-
sulted her." The testimony tended to show that Williams
was examined upon a charge of rape before the police jus-
tice named. One Linton testified that on that occasion
he took the stenographic notes of the testimony, and that
they were correctly transcribed, to the best of his knowl-
edge and belief. He was then asked:

"*Q.* I will ask you to look at Exhibit D. You may
state whether or not Exhibit D is a correct transcript of

the testimony of Edward Dowdall, taken at the examination in the police court on the 2d of June.

"*A.* Yes, sir; I took that testimony and transcribed it, and I believe it is a true transcript of his evidence. I recognize the defendant as the man. (Exhibit D offered in evidence as a transcript of the testimony, without objection.)"

This transcript was then read to the jury without objection. It seems to have been the only testimony offered in support of the allegation that defendant testified before the police justice as charged. It is claimed that this was insufficient to prove that he so testified, and the court should have directed a verdict of not guilty, because (1) it was not shown to contain all of his testimony; (2) it was not shown that the testimony was taken correctly, or that it was correctly transcribed. It is said that not only is it not shown to be all the testimony given by the defendant, but the witness was not positive that the testimony was correctly reported and transcribed, and it did not justify the jury in finding such to be the fact, because the proof of perjury must be positive. We find no reason for saying that proof that a defendant gave the testimony alleged to be false needs to be more positive than proof of any other act. It is sufficient if it be proved to the satisfaction of the jury, and beyond reasonable doubt.

Counsel for the defendant maintain that the truth of the statement that defendant heard cries from Maggie Cooper's room on the night in question was established, and the judge seems to have eliminated it from the case by his charge.

It is contended that there is no testimony except that of Williams upon which to predicate the falsity of the statement that Maggie Cooper told him that Williams had insulted her. Mrs. Thornsbury corroborated him. Counsel ask us to say that her testimony is valueless, because it does not appear that she was present all of the time. We are of the opinion that, if the jury might not find from her testimony in the case that she was present all of

the time that the defendant was there that night, they might reasonably say that she was there at the time defendant represented that statement to have been made.

Again, it is said that it was not shown that Maggie Cooper had gonorrhea previous to February 19th, and therefore the jury should not have been permitted to find whether she had or not, and it is insisted that the testimony was not material in either instance. The theory of the prosecution was that Maggie Cooper was the defendant's paramour, and that he was offended at the presence of Williams in her room; that, in order to sustain the complaint against Williams, he claimed that she contracted the disease from Williams. It was therefore material to show that he knew to the contrary, by showing upon his cross-examination that he knew that she had it before, and had treated her for it. It was also material in the rape case to show the statements of Maggie Cooper, immediately after the alleged transaction, that Williams had insulted her; and it was none the less material, though perhaps less damaging, that she was proven to have said that he insulted her, instead of that he had intercourse with her against her will. The admission of the defendant that Maggie Cooper had the disease, and the fact that he prescribed medicines commonly given in such cases, and his cohabitation with her at the time when he himself had the disease, if such proof was made, all tended to establish the fact that she had it, and that he knew it. The fact that Williams himself testified that he never had such disease made this testimony no less material. In this connection, we may say that defendant's fourth request was properly refused.

An examination of the testimony convinces us that there was abundant opportunity for the jury to find defendant guilty, and, had they not done so, we should consider it a miscarriage of justice. This being true, we think the judgment should not be reversed on account of the language of the prosecuting officer, which is subject to

criticism in some particulars.    The charge was a fair one, and placed the salient points before the jury in a way that should have insured, and doubtless did insure, proper consideration.

The judgment is affirmed.

The other Justices concurred.