## PEOPLE v HUTTENGA

Docket No. 138864. Submitted June 2, 1992, at Grand Rapids. Decided November 2, 1992, at 10:00 A.M. Leave to appeal sought.

Daniel S. Huttenga was charged in the Kent Circuit Court with perjury after testifying in the 63rd District Court at the jury trial of Jeffrey A. Travis, who was convicted of operating a motor vehicle while under the influence of intoxicating liquor. The alleged perjurious testimony involved Huttenga's claim that it was he, not Travis, who was driving. Travis' trial included a jury view, during which Huttenga offered testimony that was not recorded. The circuit court, H. David Soet, J., dismissed the charge against Huttenga, ruling that a trial, when a complete transcript of Huttenga's testimony is unavailable, would violate Huttenga's due process rights. The prosecution appealed.

The Court of Appeals *held:*

Because it is not reasonably possible that the unrecorded portion of Huttenga's testimony was exculpatory, given the consistency of his recorded testimony that he had been the driver, a perjury trial would not violate his due process right to the preservation of exculpatory evidence.

Reversed and remanded for further proceedings.

Perjury — Court Testimony — Incomplete Transcripts — Constitutional Law — Due Process.

A charge of perjury relating to a defendant's testimony in a court proceeding in which a portion of the testimony was not recorded should be dismissed if there is a reasonable possibility that the unrecorded portion of the testimony is exculpatory; a trial under these circumstances would violate the defendant's due process right to the preservation of exculpatory evidence.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Pros-

REFERENCES

Am Jur 2d, Constitutional Law § 847; Criminal Law §§ 784, 829; Perjury §§ 93-95.

See the ALR Index under Due Process; Perjury.

ecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*Helen C. Nieuwenhuis,* for the defendant on appeal.

Before: HOLBROOK, JR., P.J., and BRENNAN and GRIFFIN, JJ.

GRIFFIN, J. Defendant, Daniel Scott Huttenga, was charged with one count of perjury, MCL 750.422; MSA 28.664, for having testified falsely at a previous criminal trial involving Jeffrey Alan Travis. The testimony alleged to be false was that he, Huttenga, had been the driver of a vehicle involved in an accident. Unfortunately, as a result of an error at Travis' trial, a few minutes of defendant's testimony was given during a jury view and not transcribed. Upon defendant's motion, the circuit court dismissed the perjury charge with prejudice, ruling that the failure to preserve defendant's prior testimony in its entirety violated his right to due process. The people now appeal as of right, and we reverse.

I

On June 1, 1990, Jeffrey Alan Travis stood trial in the 63rd District Court on a charge of operating a motor vehicle while under the influence of intoxicating liquor.[1] MCL 257.625; MSA 9.2325. The prosecutor's proofs showed that shortly after stopping at a Stop-N-Go gas station to purchase cigarettes, Travis, who was visibly intoxicated, lost control of his pickup truck and rolled it down an embankment. Travis then fled on foot to the home of a family friend, where the police discovered him

---

[1] Travis was also charged under subsection 2 of the statute for operating a vehicle while having a prohibited blood alcohol level.

hiding behind a couch. After being escorted back to the scene and failing several sobriety tests, Travis was arrested for OUIL. A subsequent Breathalyzer test administered to Travis revealed a blood alcohol content of 0.18 percent.

During his trial, Travis took the stand and denied being the driver of the truck. Travis' story was corroborated by the testimony of defendant Huttenga, who testified that he, not Travis, was driving the truck when the accident occurred. Huttenga testified that he found Travis drunk outside a nearby bar and offered to drive him home. After stopping at the Stop-N-Go for cigarettes, Huttenga was allegedly driving Travis home when a deer darted out in front of the truck. Huttenga then allegedly lost control of the truck and rolled it over into a ditch. According to Huttenga, he then walked home after Travis stated he would go for help.

Huttenga's testimony that he was the driver of the truck was severely discredited by prosecution witnesses. Diana Andrews, the cashier at the Stop-N-Go and an acquaintance of Travis, testified that she could see clearly into the cab of the pickup truck as it arrived at the Stop-N-Go. Andrews was certain that Travis was alone in the truck when he drove up and when he drove away. Another prosecution witness, Robert Leach, was a passenger in a vehicle that was behind Travis' truck when the accident occurred. According to Leach, he saw the truck flip over and rushed to render aid. Leach reached the truck within thirty to ninety seconds of the crash and found Travis to be the only one there.

The jury did not believe defendant and Travis and convicted Travis of OUIL. Subsequently, both defendant and Travis were charged with perjury for having lied about who was driving the truck.

Both defendant and Travis filed motions to dismiss. The basis for defendant Huttenga's motion was in part that a portion of his testimony had not been transcribed. As noted above, the problem stems from a jury view that took place during defendant's testimony at Travis' trial. One of the issues at Travis' trial was whether the truck was parked in such a way at the Stop-N-Go that Diana Andrews could have seen whether there was another person besides Travis inside the cab. To help resolve the question, a jury view was conducted, at which defendant apparently testified regarding where the truck was parked. The following exchange between defense counsel and Huttenga appears on the record:

*Q.* What route did you take [after picking Travis up at the bar]?

*A.* We pulled out of the parking lot onto Squires Street Square, and I took a left and went toward Main Street, turned into the gas station because he asked me to pull in there, and I pulled in and parked.

*Q.* And where is that gas station?

*A.* Right on the corner of Main Street.

*Q.* In reference to the courtroom here today, where is it?

*A.* It would be right in back of us.

*Q.* When you pulled into that station, where did you stop the vehicle?

*A.* About where the air pump is. I don't know if you know where that is.

*The Court:* Let's go over there.

*Mr. Stutzman [counsel for defendant Travis]:* Is this the relevant point to do that, Your Honor?

*The Court:* He apparently knows what he's talking about. He can point it out to us, and then we can have [Diana Andrews] testify to what she recollects.

Jurors, what we're going to do here is this

witness is under oath. We're going to go over and he can tell his story and point to various aspects of this store so you have some idea of where the original witness said she saw the truck, where he's saying he saw the truck, and we'll get an idea of what's going on here.

(Court recessed at approximately 11:16 A.M.)

(Court reconvened at approximately 11:28 A.M.)

*The Court:* The court has just returned from viewing the gas station in question and convenience store. The witness has testified what he did in terms of parking the car. The jury is back, they're correctly impaneled. ·Mr. Stutzman, you may proceed with your examination here.

*Mr. Stutzman:* Thank you, Your Honor.

Continued Direct Examination

By Mr. Stutzman:

*Q.* Why don't we start where you pulled away from the station.

*A.* All right.

*Q.* You testified, I believe, while we were over there that Mr. Travis attempted to get into the driver's side of the vehicle?

*A.* Yes.

*Q.* And he did not do so?

*A.* No, he didn't.

*Q.* That's because you told him you were driving?

*A.* Yes.

Following a hearing, the circuit court agreed with defendant Huttenga that this gap in the record mandated dismissal of the perjury charge. In granting defendant's motion, the circuit court reasoned as follows:

The other issue is a little more troubling, and that is the fact they had a jury view. The court on its own motion decided to have a jury view. They went out to the scene where one of the prosecution's witnesses allegedly saw Mr. Travis leave the

store in which she was clerking and climb into his car alone and drive away a few moments or a few minutes before the accident. Apparently there were other witnesses to much the same effect.

While they were out on this jury view, contrary to the requirements of MCR 2.513(A), they took testimony from Mr. Huttenga, who's one of the defendants in this case on the perjury charge. Mr. Huttenga testified to something out there, we don't know what. It was not taken down. There was no court reporter present. So we have a situation where one of these gentlemen who's charged with perjury testified under oath but without it being reported in the course of this jury view. That violates court rules.

I have read the cases that the prosecution cites. My conclusion is this, I don't think that this testimony has any effect at all on Mr. Travis. Mr. Travis isn't being prosecuted for what Mr. Huttenga said. He's being prosecuted for what he said, and he didn't testify out there. The problem is relative to Mr. Huttenga.

I have sat through a lot of trials in my life. I have heard witnesses say many things; some of them pretty strange. They sometimes contradict themselves. Perhaps while under oath, but not on the record, Mr. Huttenga said things such as, "Well, I think it was that night that I'm thinking about, it could have been another, but I'm pretty sure it was this night." Just one of those statements and this perjury charge begins to, as the phrase goes, sparkle with a duller thud.

It's hard to speculate on what Mr. Huttenga said or didn't say out there. In fact, it's impossible to speculate on it. The reason that's impossible to know exactly what he said is because the court violated the court rules by allowing him to testify in those circumstances. On a perjury charge, what the defendant said is the corpus delicti. While in other cases that may be proved by extrinsic evidence, court rules explicitly require that testimony be taken on the record. Presumably that is required so that perjury charges can be properly

grounded as well as for other reasons, such as review by higher courts.

Under the circumstances, the motion to dismiss as to Mr. Travis is denied. The motion as to Mr. Huttenga is granted.

## II

On appeal, the prosecutor contends that the circuit court's ruling was erroneous. The prosecutor argues that despite the error in procedure that occurred with respect to Huttenga's testimony at Travis' trial, dismissal with prejudice was not warranted because (1) the state can still prove perjury as charged in the information solely on the basis of Huttenga's in-court testimony, and (2) defendant Huttenga cannot show how he has even arguably been prejudiced as a result of a portion of his testimony not having been transcribed. After thorough review, we agree with the prosecutor's position.

At the outset, we are constrained to note the plain error that occurred in allowing Huttenga to testify at the jury view. MCR 6.414(D) governs the conduct of jury views in criminal trials. The rule provides as follows:

> The court may order a jury view of property or of a place where a material event occurred. The parties are entitled to be present at the jury view. During the view, no person other than the officer designated by the court may speak to the jury concerning a subject connected with the trial.

As the transcript quoted above indicates, this rule was clearly violated at Travis' trial when Huttenga testified at the jury view. However, whether this violation precludes a subsequent

prosecution against Huttenga for perjury is a different issue. In arguing that the circuit court acted correctly in dismissing the charge, defendant relies heavily on *Polk v State,* 204 Miss 538, 541; 37 So 2d 761 (1948), and on the following observation in 60A Am Jur 2d, Perjury, § 82, pp 1113-1114:

> The requirements of proof in a perjury case are more stringent than those in any other area of law except treason. Because of the special nature of a perjury charge, pitting as it does the oath of one person against that of another, the proof of falsity must not only satisfy the reasonable doubt standard applicable in all criminal trials, but must also meet certain requirements as to form.
>
> In order to convict a person of perjury alleged to have been committed on the trial of a case, the production of the record in that case, or of a duly authenticated transcript thereof, is essential, unless the proofs of such judicial proceeding are waived or dispensed of by admission or otherwise.

Upon review, we agree with the prosecutor that the above statement recites no more than the general rule. Indeed, the Mississippi Supreme Court recently appeared to concede as much in *Smallwood v State,* 584 So 2d 733 (Miss, 1991). In *Smallwood,* the defendant was prosecuted for perjury for allegedly having lied to a grand jury. Because the proceedings had not been transcribed, the prosecutor attempted to establish the defendant's false statements through the testimony of several grand jurors. Although the Court ultimately found the jurors' testimony insufficient to sustain a perjury conviction, the Court noted that the absence of a transcript was not per se fatal to the charge:

> The first, most obvious problem with the prosecution is the fact that none of the questions or

answers provided in the critical grand jury session were preserved in any manner. This Court long ago recognized the importance of having a record or trial transcript where perjury was alleged to have occurred in the trial of a case or other proceedings in a court of record. See *Polk v State,* 204 Miss 538, 37 So 2d 761 (1948). The potential for error is obvious, especially with an offense where conviction depends so literally on the exact words of the defendant. If our research is any indication, then cases such as this, where perjury is prosecuted without any kind of transcript or verbatim record of the proceedings in question, are extremely rare. We do not find that such a prosecution for perjury is *per se* flawed or reversible. We do find that when a situation like this occurs, the district attorney must make an effort to preserve in some manner the questions asked and the answers given by the defendant. [*Id.* at 741.]

Similarly, Michigan appears to follow the rule that a complete transcript is not an indispensable prerequisite in every perjury prosecution. *People v Dowdall,* 124 Mich 166, 168; 82 NW 810 (1900). For these reasons, we reject defendant Huttenga's argument that the gap in the record of his prior testimony automatically renders the perjury case against him tainted with fundamental unfairness.[2]

### III

We turn now to the dispositive issue before us. We must decide, given the facts of this case, whether the failure to transcribe Huttenga's testimony at the jury view would result in a denial of due process if he were subsequently tried for per-

---

[2] In *People v Bellanca,* 386 Mich 708; 194 NW2d 863 (1972), our Supreme Court held that in order to be afforded due process, a defendant charged with perjury before a one-man grand jury was entitled, upon a proper request, to the transcripts of the testimony of all witnesses. *Bellanca* is inapposite because it involved the refusal to furnish available transcripts.

jury as charged. We answer this question in the negative.

Initially, we note that there appears to be no authority precisely on point. Were this a prosecution for a crime other than perjury, we would find *Arizona v Youngblood,* 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988), to be controlling. In *Youngblood,* the issue before the United States Supreme Court was "the extent to which the Due Process Clause of the Federal Constitution requires the State to preserve evidentiary material that might be useful to a criminal defendant." *Id.* at 52. The Court held that when the exculpatory nature of the evidence is speculative, due process is not violated in the absence of bad faith where the state fails to preserve such evidence. In pertinent part, the Supreme Court reasoned:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady* [*v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963)], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in [*California v Trombetta,* 467 US 479, 486; 104 S Ct 2528; 81 L Ed 2d 413 (1984)] that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause, see *Lisenba v California,* 314 US 219, 236; 86 L Ed 166; 62 S Ct 280 (1941), as

imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. [*Id.* at 57-58.]

We recognize that in perjury prosecutions, a complete transcript is not ordinary evidence but normally indispensable evidence. *Smallwood, supra.* In view of the critical nature of such evidence, we deem it appropriate to apply a standard stricter than *Youngblood, supra,* and will require dismissal if there is a reasonable possibility that the missing transcript was exculpatory. Here, we find no such possibility. Accordingly, we reverse the dismissal and remand for further proceedings.

The precise nature of the charge against Huttenga is central to our holding. The information in this case charges defendant Huttenga with perjury for having testified falsely "that Daniel Huttenga was [the] driver of the vehicle." On this point, Huttenga's testimony at Travis' trial continues for nearly sixty pages of the transcript, interrupted only by a twelve-minute jury view. Significantly, defendant does not allege that at the jury view he denied or equivocated about being the driver. It is unrefuted that Huttenga's testimony that he was the driver is uninterrupted. As the transcript indi-

cates, defendant's testimony on the record stops with him having parked the truck in front of the gas station, and resumes with him driving away. Huttenga testified unequivocally and extensively that he was driving the truck both before and after he and Travis stopped at the Stop-N-Go. Under these circumstances, we conclude that it is highly unlikely that Huttenga's testimony at the jury view bore any relevance to the perjury charge at issue. When viewed in the overall context of the trial, it borders on the irrational to contend that defendant's brief jury view testimony was likely to be exculpatory. In this regard, we agree with the following observations made by the prosecutor:

> The People submit that only by sheer speculation, and irrational speculation at that, can it be suggested that Huttenga's untranscribed statements during the jury view were exculpatory. Defendant Huttenga cannot seriously suggest, in view of his statements both before and after the jury view, that he actually testified that he wasn't driving during the untranscribed view. Further, this would be irrelevant to defendant Huttenga's continued assertion, clearly made on the record, that he was driving. What possible "exculpatory" evidence has been "lost" is on this record unfathomable.

We also agree with the prosecutor that defendant's allegation of prejudice is wholly disingenuous. We are mindful that the lack of a transcript of the jury view precludes defendant from establishing prejudice by simply citing the record. Presumably, however, it is defendant's position that he testified truthfully at the jury view. Thus, absent a memory loss, which defendant does not claim, he should have a recollection of his own testimony.

Although we do not wish to minimize the significance of the error that occurred at Travis' trial, we hold that the error did not deprive Huttenga of due process. Accordingly, we reverse the order of dismissal and remand for further proceedings.

Reversed and remanded.