# Court of Appeals, State of Michigan

# ORDER

People of MI v Daniel Dante Burch

Docket No.    322814

LC No.    13-006304-FC

Amy Ronayne Krause
Presiding Judge

Jane E. Markey

Michael J. Kelly
Judges

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued February 11, 2016, is hereby VACATED. A new opinion is attached to this order.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

**MAY 03 2016**
_____
Date

_____
Chief Clerk

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL DANTE BURCH,

        Defendant-Appellant.

UNPUBLISHED
May 3, 2016

No. 322814
Wayne Circuit Court
LC No. 13-006304-FC

ON RECONSIDERATION

Before: RONAYNE KRAUSE, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment for the murder conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

Defendant's convictions stem from the May 10, 2013 shooting death of James Forth. The prosecution's theory of the case was that defendant shot Forth, who worked as a security guard, while trying to rob Forth and take his gun. Forth's body was discovered sitting in his vehicle at the rear of the office building he was guarding. The handgun that Forth normally carried for his work was missing. Although there were no eyewitnesses to the shooting, witnesses described hearing two gunshots, and, after the shooting, a witness observed defendant walking through the alley and holding a handgun near the crime scene. Forth died from a single gunshot wound. Defendant was also treated for a gunshot wound that same day. Defendant's blood type and DNA profile matched samples collected from the crime scene. Defendant did not testify at trial.

Defendant first argues that defense counsel was ineffective by impermissibly infringing on his right to testify. Because defendant did not raise this ineffective assistance of counsel claim in the trial court or request an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), our review of this issue is limited to mistakes apparent on the record. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003); *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Effective assistance of counsel is presumed and defendant has a heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303;

521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). Defendant has the burden of establishing the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Defendant must overcome the strong presumption that counsel's assistance was sound trial strategy. *Id*. Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *Id*.

A criminal defendant has a constitutional right to testify. *People v Simmons*, 140 Mich App 681, 683-684; 364 NW2d 783 (1985). While the decision whether to call the defendant to testify is generally a matter of trial strategy, *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986); *People v Alderete*, 132 Mich App 351, 360; 347 NW2d 229 (1984), the defendant retains the ultimate authority to decide whether to testify. *Jones v Barnes*, 463 US 745, 751; 103 S Ct 3308; 77 L Ed 2d 987 (1983); *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Thus, a defendant has the right to testify even if counsel disagrees with that decision. *Simmons*, 140 Mich App at 685.

On the fourth day of trial, the trial court inquired whether defendant intended to testify. Defendant initially stated that he did not want to testify, then moments later stated that he wanted to testify. The defense then recalled an investigating officer to testify. After the officer's testimony concluded, defense counsel requested a sidebar conference with the court. After the conference, the defense rested without defendant being called to testify. Later, during defense counsel's closing argument, defendant interjected, "Your Honor, may I speak to let them know what happened?" The trial court said no. Following closing arguments, the trial court stated on the record:

> One final thing before we have the jury begin their deliberations, and I do note that yesterday when the prosecution rested their case, I gave Mr. Evans and Mr. Burch the opportunity to, that afternoon and overnight to Mr. Burch, to think about whether he wanted to testify or not testify.
>
> Because there has been, I think it's fair to say that during the course of the trial he had sort of gone back and forth as to whether or not he wanted to testify or not testify. Similarly this morning there was some opportunity provided for Mr. Evans to confer, I think, on several occasions with Mr. Burch. And Finally Mr. Burch indicated he did not want to testify.

The trial court then gave the parties an opportunity to comment on the accuracy of the trial court's summary, and defense counsel agreed that the court's summary was accurate. Defendant did not object to defense counsel's agreement with the trial court's statement.

Given this record, there is no basis for concluding that defense counsel impermissibly infringed on defendant's right to testify. "If defendant [] decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id*. [internal citations and quotations omitted]. The trial court's statement after closing arguments gave defendant an opportunity to assert his right to testify or object to not being able to do so. Defense counsel

agreed with the trial court's summary, and defendant ultimately remained silent, which evinced an implied acceptance of defense counsel's assertion. As the trial court observed, defendant's later statements to the contrary appear to reflect a belated change of heart or potentially gamesmanship. This characterization is consistent with defendant's earlier equivocation about whether to testify.

In an attempt to show that he was denied his right to testify, defendant stated at sentencing, "When I asked, [defense counsel] said it was the best thing for me to just be quiet." This statement does not indicate that defense counsel prevented defendant from testifying, but indicates that defendant consulted with defense counsel about whether to testify, and implies that defendant agreed with counsel's advice not to testify. The fact that defense counsel believed it was best that defendant not testify does not establish that counsel impermissibly infringed on defendant's right to testify. Defendant did not indicate that defense counsel refused to permit defendant to testify against defendant's wishes, and nothing in the record supports any such conclusion.

Defendant makes numerous other arguments regarding his right to testify, such as re-opening proofs after defendant interrupted closing arguments and whether the judge should have inquired further into defendant's desire to testify during closing arguments. However, these arguments are without merit because the trial court ultimately addressed these concerns before jury deliberations, and defendant ultimately waived his right to testify. When defendant interrupted closing arguments, it would have been prudent for the trial court to clarify defendant's position before proceeding. However, the trial court did make a statement on the record, after closing arguments, explaining that defendant no longer wished to testify, and defendant did not object to this statement when given the opportunity. Because defendant did not object to the trial court explicit statement that "[defendant] indicated he did not want to testify," he effectively waived his right to testify. Had defendant objected at this point, the trial court likely would have been inclined to inquire further into this request and decide whether it was appropriate to reopen proofs. However, based upon the record, this was not an issue because defendant waived his right to testify, on the record, when he did not object to the trial courts explicit statement.

Furthermore, defendant has not presented any affidavit or other offer of proof to shed further light on the circumstances surrounding his decision whether to testify, or what advice counsel may have provided regarding the decision to testify. Defendant is required to provide factual support for his claim, *Hoag*, 460 Mich at 6, and the limited record presented fails to establish any factual support for defendant's claim that defense counsel impermissibly infringed on defendant's right to testify. Therefore, we reject this claim of error.

Defendant next argues that defense counsel performed deficiently by eliciting testimony from prosecution witness Isaac Brown, defendant's half-brother, regarding defendant's statement to Brown that he had been shot while "trying to take a gun" from a security guard. Defendant argues that counsel's cross-examination of Brown permitted the jury to find that defendant committed the underlying larceny or robbery and thereby allowed the jury to convict him of felony murder.

Decisions regarding what evidence to present, whether to call and how to question witnesses, and what evidence to highlight in closing argument are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008); *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.*

On direct examination, Brown testified that defendant told him that "some guard" was the person who shot him. On cross-examination, defense counsel asked Brown if he told the police that defendant had told him that defendant had tried to take the guard's gun. Brown replied, "He said a lot of things in the car." Brown also agreed with defense counsel that defendant was "experiencing the pain and delusions of being shot" and was "rambling." However, Brown then stated that there was "no difference" between his earlier statement and his testimony at trial, and again stated that defendant told Brown, while they were in the car, that defendant had tried to take the guard's gun. During redirect examination, Brown again stated that defendant had told him that he had tried to take a gun from a security guard. Later, defense counsel questioned the police officer who interviewed Brown at the hospital. The officer denied that Brown reported that defendant had said he was shot while taking a security guard's gun.

Counsel's questioning of Brown occurred in the context of asking Brown if he told *the police* that defendant had said that he was shot while trying to take the guard's gun. Counsel was presumably aware that Brown had made such a statement to medical personnel because it was contained in a medical record, but counsel was attempting to discredit Brown by revealing that he had not made a similar statement to the police. The record discloses that counsel later elicited from the officer who interviewed Brown at the hospital that Brown never reported this information, thus providing an objective basis for counsel to believe that Brown did not report that information to the police. Nevertheless, Brown insisted that he conveyed the information to the police. In response to this apparently unanticipated answer, defense counsel elicited Brown's admission that defendant was rambling, in pain, and appeared to be delusional from having been shot, and, as indicated, counsel later attempted to discredit Brown's apparently unanticipated testimony by eliciting the interviewing officer's denial that Brown had mentioned defendant's comment about being shot while trying to take the guard's gun.

While defense counsel's cross-examination of Brown may not have unfolded as counsel had hoped, it was still strategic, and defendant has not overcome the presumption of sound strategy. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (After Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Moreover, we disagree with defendant's claim that it was Brown's testimony that permitted the jury to find that defendant committed the underlying larceny or robbery, thereby allowing the jury to convict him of felony murder. Several witnesses testified that Forth was armed with a handgun and that, after the shooting, his gun was missing. After shots were fired, a witness saw defendant holding a handgun in the area of the shooting. Other evidence, including testimony and records about the gunshot wound to defendant's abdomen and DNA evidence linking defendant to Forth's car, provided further support for the proposition that defendant was shot while trying to steal Forth's gun. Accordingly, there is no reasonable probability that the outcome would have been different but for the introduction of the challenged testimony.

Defendant also argues that defense counsel was ineffective for not objecting to defendant's medical record, which included Brown's statement that defendant had told Brown that he tried to steal the guard's gun. Defendant argues that Brown's statement was inadmissible hearsay and, therefore, the medical record should not have been introduced at trial without redaction.

"Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule . . . " MRE 805. One exception to the hearsay rule is an admission by party-opponent. MRE 801(d)(2). The statement qualifies as an admission by a party-opponent when "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . " MRE 801(d)(2)(A). Another exception to the hearsay rule is the Records of Regularly Conducted Activity exception. MRE 803(6). In order to be admitted under MRE 803(6) the evidence must be:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. MRE 803(6).

In this case, defendant made a statement to Brown about trying to steal the guard's gun, which Brown then relayed to the hospital staff. This statement was later introduced against defendant via the medical record. In *People v Armstrong*, 175 Mich App 181, 186; 437 NW2d 343, 345 (1989), the court held that "statements[] being made by defendant and used against him at trial, were not inadmissible hearsay." Furthermore, Brown was available to testify, allowing defendant to impeach Brown's testimony. Therefore, Brown's statement about what defendant admitted is admissible under MRE 801(d)(2)(A).

Next, as conceded by defendant, the introduction of the medical records containing Brown's statement is admissible under the Records of Regularly Conducted Activity exception. MRE 803(6). It is likely that the statement and record of defendant's injury was kept pursuant to regular business activities. Therefore, this statement was admissible under MRE 803(6). Moreover, Brown's underlying statement appears to have qualified for admission under MRE 801(d)(1)(B), which provides that a prior statement by a testifying witness is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." The thrust of defense counsel's inquiries into the fact that Brown did not tell the police that defendant had stated that he tried to take Forth's gun was at least an implicit charge that Brown was fabricating his trial testimony on this point, perhaps to ward off suspicion stemming from the police's

discovery of Brown's weapon. The prosecutor noted during closing argument that Brown had made this prior consistent statement to hospital employees before any motive to lie to the police arose.

Had counsel objected, the trial court could have found that the statement in the medical record was admissible as hearsay within hearsay under MRE 805. Brown's statement to hospital personnel is admissible under MRE 801(d)(2)(A), and the statement in the medical record is admissible under MRE 803(6), and MRE 801(d)(1)(B). Therefore, counsel cannot be deemed ineffective for not objecting to this evidence. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).

In our original opinion, we neglected to address the issues defendant raises in his late-filed Standard 4 brief, which we granted leave to file after oral argument.

In his Standard 4 brief, defendant first argues that the trial court should have found him incompetent. Competence to stand trial is presumed. MCL 330.2020(1); *People v Davis*, 310 Mich App 276, 288; 871 NW2d 392 (2015). Defendant asserts that it should have been readily apparent from his expressions of confusion throughout the proceedings that he did not understand what was going on. He further asserts that the trial court should not have penalized him for refusing to cooperate with the independent psychologist assigned by the court to conduct a forensic examination of defendant's competency. Defendant seriously mischaracterizes the record. First, we defer to the trial court's superior ability to assess the credibility of those who actually appeared before it, something we cannot readily do from a transcript. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). Second, it is readily apparent from the report the psychologist provided that defendant fully understood the purpose of the evaluation and its significance, and he was malingering, *not* actually confused or incompetent. We find nothing in the record[1] suggestive of a true inability to "understand[] the nature and object of the proceedings against him or . . . assist[] in his defense in a rational manner." MCL 330.2020(1). We find that the trial court correctly concluded that defendant's alleged incompetence was a sham.

Defendant next argues that he was denied his right to counsel of his choice, an attorney allegedly retained by his mother, and the trial counsel ostensibly forced on him was an unreliable character who repeatedly failed to appear at hearings, malingered his own health issues, "used his client to support his manipulatively dramatic courtroom antics, and was held in contempt multiple times for outrageous misconduct." There is *some* merit to what defendant says, insofar as the record does reveal several instances of inappropriate and emotional outbursts by counsel. Furthermore, defendant correctly states that he has a right to choose his own retained counsel; however, it is not an absolute right. *People v Aceval*, 282 Mich App 379, 386-387; 764 NW2d 285 (2010). The trial court clearly took defendant's assertion at the commencement of trial that he was unhappy with counsel and wanted a different attorney who his mother had retained.

---

[1] In addition, although the trial court would not have had access to it and it has not played a role in our findings (because competence is not necessarily a static trait), we note that defendant's handwritten brief is one of the more lucid and coherent such briefs we have read.

Defendant's recitation of the facts omits the trial court's observation that the named alternate attorney had made no effort to inform the court, submit an appearance, or even mention the representation to the prosecutor when the prosecutor and alternate attorney had coincidentally conversed the previous day. The trial court also took note of the psychiatric report of defendant's obstructive behavior, as well as the extensive efforts and preparations counsel had gone to on defendant's behalf. Considering the timing of defendant's request—literally at the start of trial—and his apparent obstructionist behavior, we do not believe the trial court *erroneously* denied defendant his right to counsel of choice. *Aceval*, 282 Mich App at 386-389. We have already addressed whether counsel was, in the end, ineffective.

Defendant next argues that the only eyewitness anywhere near the scene of the crime had clearly been influenced by an unduly suggestive photographic lineup, and otherwise, "the evidence boiled down to Mr. Burch's alleged confession to Isaac Brown when en route to the hospital and hearsay in a medical report, both subject to credibility testing and the latter subject to admissibility." We note that there was also DNA evidence, but we accept that it was considered a "low level DNA sample." Nevertheless, we have already determined that the confession and the medical report were properly admitted, and this would be enough basis to sustain defendant's conviction even without the identification.

Additionally, defendant mischaracterizes the testimony. Fitzpatrick was not unable to identify defendant at the preliminary examination, he was not asked to after he stated that he was unsure whether he could. More importantly, the allegedly suggestive photographic lineup is simply a mystery: Fitzpatrick was shown photographs "right there outside of the hospital" by an unknown police officer taken from a security camera "from that building," which was not itself identified, and Fitzpatrick identified defendant in one of the photographs as the man he saw at the scene. The officer in charge of the case did not state that the lineup was unduly suggestive, but rather was "tainted" because he did not know who showed it to Fitzpatrick or what the photographs were, so he opted not to pursue his identification any further. The confused nature of the photographs shown to Fitzpatrick was presented to the jury, as was the fact that the license plate number Fitzpatrick provided was a digit off from the vehicle defendant drove. Finally, Fitzpatrick clarified at trial that he *had* seen the face of the man in the hoody, but not the man's hair. In the end, there is simply nothing about the situation to suggest that the photographic lineup shown to Fitzpatrick was in any way suggestive. See *People v Kurylczyk*, 443 Mich 289, 302-303; 505 NW2d 528 (1993).

Defendant next argues that the prosecution suppressed exculpatory evidence in the form of video camera surveillance records of the shooting. The testimony indicates that the victim's car was, in fact, under video surveillance. The testimony further implies that at least one police officer had access to the video recording to show images from that recording to Fitzpatrick. The testimony does not explain why the video recording was not presented at trial and, seemingly, not even taken into evidence. However, both defense counsel and the prosecutor addressed the recording during closing argument, the prosecutor stating that "if I had a video that showed [defendant] definitively doing something, you would have seen it." We appreciate defendant's frustration with the video's unexplained absence, but there is nothing in the record to suggest that it would have been in any way exculpatory aside from defendant's own circular assertion of his own innocence. Whatever value the video recording might have is purely speculative. Therefore, because there is no evidence that the police or the prosecution acted in bad faith, any

failure to preserve or present the video recording is not a violation of due process. *People v Huttenga*, 196 Mich App 633, 642-643; 493 NW2d 486 (1992).

Defendant finally argues that trial counsel was ineffective for failing to properly object to the medical report and for failing to properly investigate the surveillance video recording. As to the latter, for the reasons already discussed, defendant has not established that any such investigation would have yielded anything that would have affected the outcome of the proceedings. See *Armstrong*, 490 Mich at 290. As to the former, defendant provides a slightly different argument than did appellate counsel, but we have already considered the arguments defendant presents in discussing the matter above. Suffice to say that for the reasons already stated, we find that the medical report was properly admitted. Consequently, we do not find trial counsel to have been ineffective.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey