*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BLAKE DURAELL HANNAH,

Defendant-Appellant.

UNPUBLISHED
May 16, 2025
11:25 AM

No. 368516
Monroe Circuit Court
LC No. 2023-247357-FH

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of, and sentences for, delivery of methamphetamine, second offense, MCL 333.7401(2)(b)(*i*) and MCL 333.7413(1), and delivery of less than 50 grams of fentanyl, second offense, MCL 333.7401(2)(a)(*iv*) and MCL 333.7413(1). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to serve 72 months' to 40 years' imprisonment for the methamphetamine conviction, and 34 months' to 40 years' imprisonment for the fentanyl conviction. We affirm.

## I. PROSECUTORIAL ERROR

Unpreserved arguments of prosecutorial error are reviewed for plain error affecting substantial rights. *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). Reversal is warranted only if the plain error resulted in the conviction of an innocent person, or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The prosecutor has a duty to ensure that a defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The responsibility of a prosecutor is "to seek justice and not merely convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

The test of prosecutorial misconduct[1] is whether a defendant was denied a fair and impartial trial. *Id*. A fair trial "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64.

Prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors have "great latitude regarding their arguments" in closing, and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

## A. MISSTATEMENT OF LAW

Defendant argues that the prosecuting attorney misstated the law in rebuttal argument by stating, "There's no video because it puts the identity of the confidential informants—it puts their safety at issue."

"A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). Defendant notes that the challenged statement referred to the testimony of Detective Sergeant Joshua Dorow. That witness testified that the activities of confidential informants were not recorded because such recordings could become available to the public by way of requests under the Freedom of Information Act[2] (FOIA), but admitted on cross-examination that he was not aware of an exception to FOIA disclosure for ongoing investigations. Defense counsel, in closing argument, summarized Dorow's testimony by explaining that transactions with confidential informants were not recorded because of concerns that such recordings could become public under FOIA, but that Dorow did not know of a FOIA exception for ongoing investigations.

Defendant argues that the prosecuting attorney's statement that recording was not done to protect the informants, when there was actually a statute that provided such protection, denied him a fair trial, because it suggested that the "only way to identify him was through eyewitness testimony, undercutting his defense," when "it would have been very easy to record at least the audio of the conversations." However, the FOIA provision defendant cites as protecting confidential informants from unmasking pertains to police body cameras, whereas this case involved a listening device placed on the informant's body. Importantly, the prosecuting attorney did not offer as a statement of the law that FOIA militated against the recording of informants, but instead generally referenced an apparent police policy precluding recording their staged transactions out of concern for the safety of informants. Both Detective Sergeant Dorow, and Detective Tyler Kleinert, testified that it was standard practice to forgo recording of confidential

---

[1] "Prosecutorial misconduct" is a term of art used to describe any error committed by the prosecution, even though claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

[2] MCL 15.231 *et seq.*

informants, with Dorow adding the reference to FOIA. Defense counsel objected to the latter testimony as a misstatement of the law, but the trial court allowed it on the ground that it reflected Dorow's understanding of police policy, rather than his understanding of FOIA. On cross-examination, defense counsel clarified with Dorow that Dorow was not aware of any confidential-informant exception to FOIA, and, as stated, summarized that exchange during closing argument. Because the prosecuting attorney's comment accurately reflected the testimony of Dorow and Kleinert, without making a statement of law, as had defense counsel, the challenged comment was not improper.

## B. VOUCHING

Defendant also argues that the prosecuting attorney's rebuttal argument included improper vouching for the credibility of police witnesses who identified defendant in connection with the alleged drug transactions. Defendant takes issue with the following:

> Why would trained, seasoned, veteran law enforcement officers put their careers at risk by taking the stand and misidentifying someone? If there was any doubt, any doubt whatsoever, why would they risk it, why would they get up here in front of you and swear under oath to the tell the truth, the whole truth, and nothing but the truth, and not be one thousand percent sure that they had identified the right person[?]

A prosecuting attorney may not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Such commentary could influence the jury to decide the case on the basis of the prosecutor's special knowledge and not on the evidence presented. *People v Bennett*, 290 Mich App 465, 476-477; 802 NW2d 627 (2010). A prosecuting attorney's statement about the credibility of a witness may infringe on the "exclusive province of the jury" to determine credibility, particularly given the importance of the prosecutor's position. *People v Erb*, 48 Mich App 622, 631-632; 211 NW2d 51 (1973).

The challenged statement, on its face, plainly suggested that the officers were truthful because of the consequences of perjury, which did not imply any special knowledge that the prosecution had that the witnesses were telling the truth, or that the jurors should defer to the prosecuting attorney's credibility characterizations. At issue is whether the comment was "an attempt to argue guilt based on evidence already introduced at trial," or an attempt to "authenticate and reinforce the veracity of all witnesses called by the prosecutor-Because they were called by the prosecutor." *Erb*, 48 Mich App at 633. Here, in light of the context of the challenged comment, it is apparent that the arguments on the credibility of the officers were properly based on their testimony.

Additionally, when a defendant advances a theory, prosecutorial argument on the inferences created is proper. *People v Reid*, 233 Mich App 457, 477; 592 NW2d 767 (1999). Here, defense counsel directly challenged the credibility of the prosecution witnesses, and it therefore was proper for the prosecuting attorney to respond in kind in rebuttal. A prosecuting attorney may comment on his or her own witnesses' credibility during closing argument, especially when there

is a credibility challenge and the question of the defendant's guilt depends on which witnesses the jury believes. *Thomas*, 260 Mich App at 455. For these reasons, the challenged prosecutorial comments were not improper.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial attorney's performance was deficient by failing to object to the instances of prosecutorial error he asserts on appeal.

Appellate review of the constitutional question whether an attorney provided ineffective assistance is reviewed de novo. *Unger*, 278 Mich App at 253. Review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent on the existing record. *Id*.

Defendant argues that his trial attorney's performance was deficient by failing to object to the prosecuting attorney's closing remarks misstating the law, and improperly vouching for the credibility of police witnesses. However, as discussed, the prosecuting attorney did not present a statement of law, but rather accurately summarized the detectives' testimonies about why they did not record the drug transactions, and permissibly argued that the police witnesses' identification testimony was credible in response to defense counsel's contrary argument. Therefore, any attendant objections would not likely have been sustained. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. FAILURE TO INVESTIGATE

Defendant argues that the prosecution failed in its duty to investigate which resulted in there being no recordings of the confidential informants' transactions with defendant available for presentation at trial.

## A. STANDARD OF REVIEW

Unpreserved arguments like this one are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763. Reversal is warranted only if the plain error resulted in the conviction of an innocent person, or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Id*. at 763-764.

## B. INVESTIGATION

Defendant first argues that the prosecution committed misconduct by failing to ensure that the police adequately investigated his cases. Again, the prosecutor has a duty to ensure that a defendant receives a fair trial, *Farrar*, 36 Mich App at 299, and "[t]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial," *Dobek*, 274 Mich App at 63.

Defendant asserts that he had a right to some greater level of police or prosecutorial investigation than took place here. However, defendant cites no binding authority supporting the proposition that prosecutorial misconduct may properly be asserted on the basis of inadequate investigation. Deficiencies in the evidentiary support for a defendant's charges are typically

challenged in the preliminary examination, by cross-examination at trial, a motion for a directed verdict, posttrial motions, or an appellate challenge to the sufficiency of the evidence. In his argument, defendant does not specify any lack of investigation other than the lack of recordings of the drug transactions. As noted, at trial, two members of MANTIS testified that confidential informants were not recorded performing drug transactions in order to protect the informants' identities. Defense counsel was able to make capital out of that policy with questions on cross-examination, and in closing arguments, as he did the limits of the quality of the identifications.

## C. RECORDINGS

Defendant argues that the prosecution wrongly destroyed the one recording of a confidential informant's purchasing drugs from defendant. With regard to the August 30, 2022 methamphetamine sale, Detective Kleinert testified that he gave the informant a cellular phone before the informant met with defendant. He elaborated that "it's a State Police recording device . . . so we can hear the interaction between the CI and the suspect for the safety, more or less, for our CI." On cross-examination, Kleinert testified that he did not preserve a recording of the transaction, stating, "I don't have the recording, we didn't record it."

Defendant argues that he was denied his constitutional rights to present a complete defense when the police failed to preserve a recording of the sale of methamphetamine to a confidential informant. See *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). In order to demonstrate a due-process violation involving the failure to preserve evidence, a "defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017) (quotation marks and citation omitted).

The failure to preserve evidence that is merely "potentially useful" is not a due-process violation unless the police acted in bad faith, and mere negligence does not establish bad faith. *People v Huttenga*, 196 Mich App 633, 642-643; 493 NW2d 486 (1992). It is defendant's burden to demonstrate that "the evidence was exculpatory or that the police acted in bad faith." *Dickinson*, 321 Mich App at 16 (quotation marks omitted).

The record does not support the assertion that the police failed to preserve a recording of the transaction, because Detective Kleinert unambiguously stated that "we didn't record it." His testimony was that he placed a "recording device" on the informant for the purpose of protecting the informant, not to gather evidence of the transaction. Additionally, there is no indication that any such audio recording of the transaction, which the informant and two officers witnessed, would have been exculpatory in nature. For these reasons, defendant has not supported this appellate argument.

## III. JURY INSTRUCTION

Defendant argues that the trial court should have instructed the jury that the destruction of a recorded interchange between defendant and an informant was the responsibility of the prosecution, and that the jurors may infer that this evidence would have been unfavorable to the prosecution's case. This Court reviews de novo preserved claims of instructional error. *People v Wade*, 283 Mich App 462, 464; 771 NW2d 447 (2009).

A defendant has the right to a properly instructed jury. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). "The trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Mills*, 450 Mich at 80. "[J]ury instructions must include all the elements of the charged offenses," and may not exclude "material issues, defenses, [or] theories" where there is supporting evidence. *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413.

As noted, Detective Kleinert testified that a listening device was used "so we can hear the interaction between the CI and the suspect for . . . safety . . . for our CI" during the August 30, 2022, methamphetamine sale, but nothing was actually recorded. The evidence therefore did not indicate that any such recording ever existed, let alone was destroyed. Therefore, an instruction inviting an inference that the unpresented evidence was not favorable to the prosecution was not warranted.

## IV. INSUFFICIENT EVIDENCE

Defendant argues that his identity as the individual selling drugs to the confidential informants was not proved beyond a reasonable doubt. This Court reviews de novo a challenge to the sufficiency of the evidence. *Ericksen*, 288 Mich App at 195.

Due process[3] requires that every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecution produced sufficient evidence, the appellate court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). "[A] reasonable doubt is an honest doubt based upon reason. It is a state of mind that would cause the jurors to hesitate when acting in the graver and more important affairs of life." *People v Jackson*, 167 Mich App 388, 391; 421 NW2d 697 (1988) (citation omitted). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from it, are considered to determine whether the evidence was sufficient to sustain a conviction. *Hardiman*, 466 Mich at 429.

"Identity is an essential element of every crime." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). A "positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Circumstantial evidence, and even "reliance on an inference founded on an inference," may

---

[3] US Const, Am XIV, § 1; Const 1963, art 1, § 17.

establish a perpetrator's identity. *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016). The trier of fact decides the credibility of identification testimony. *Davis*, 241 Mich App at 700.

Defendant was identified as the perpetrator by eyewitness testimony from two confidential informants, along with police officers who were assigned to MANTIS. With regard to the July 13, 2022, transaction for $40 worth of what turned out to be fentanyl, the confidential informant testified that he had met defendant 10 to 15 times before executing a "controlled buy" from him for MANTIS. He continued that he contacted defendant for a meeting, and defendant took his money for a folded paper containing drugs. Detective Kleinert testified that he observed the informant park his vehicle, and a man ride up to the informant's window on a bicycle. Detective Sergeant Jordan Long testified that he was familiar with defendant's appearance from interacting with him for 30 minutes to an hour approximately five months before the controlled buy, and also from defendant's driver's license and social-media images. Long observed from his vehicle defendant ride his bike away from the drug sale, passing within 10 feet of Long, and Long followed, passing near defendant as defendant entered a residence. Long testified that he was "one hundred percent sure" defendant was the person selling drugs from a bicycle.

In sum, two witnesses who were familiar with defendant's appearance identified defendant as the dealer. Reasonable jurors could infer from Detective Kleinert's testimony that a drug transaction took place, and from the informant's and Sergeant Long's identification of defendant from close observation, that defendant was the seller. For these reasons, the evidence identifying defendant as the person who sold fentanyl to the informant on July 13, 2022, was sufficient to support defendant's conviction of that offense.

The August 30, 2022 transaction took place when a second confidential informant, supervised by MANTIS, made a "controlled buy" from defendant of $80 worth of meth-amphetamine. The informant identified defendant in court and stated that he was familiar with defendant before he became an informant, having met him once and obtained his phone number. For the controlled buy, the informant used the phone number to call defendant, then met with defendant, from whom he purchased methamphetamine. The informant testified that he was "one hundred percent sure" that defendant handed him the contraband. Detective Kleinert familiarized himself with defendant's appearance from photographs, and observed the transaction through binoculars from 75 to 100 yards away, with a clear line of sight. Kleinert observed defendant, whom he identified in court, provide drugs in exchange for money from the informant. Kleinert testified that he was "one hundred percent sure" that defendant handed drugs to the informant. Detective Sergeant Dorow, who identified defendant in court, stated that he was familiar with defendant's appearance, through reviewing photos, and personally interviewing defendant for 10 minutes in February 2022. Dorow identified defendant as the person he saw, through binoculars while in a car with Kleinert, provide drugs to to the informant. Dorow testified that he was "one hundred percent sure" that defendant handed drugs to the informant.

In sum, two witnesses who were familiar with defendant's appearance from being earlier in defendant's presence, and another who familiarized himself with defendant's appearance from images, identified defendant as the dealer. The informant identified defendant after interacting with him at close range, and Kleinert and Dorow identified defendant distributing the drugs through a visual aid from a greater distance. Each of these witnesses expressed certainty of his

identifications. For these reasons, the evidence identifying defendant as the person who sold methamphetamine to the informant was sufficient to support his conviction of that offense.

The arguments on appeal regarding the veracity of the witnesses' identifications of defendant are the same arguments defense counsel made to the jury, based largely on information defense counsel elicited on cross-examination. An appellate court does not interfere with the fact-finder's "assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). The trier of fact determines "what inferences may be fairly drawn from the evidence" and "the weight to be accorded those inferences." *Hardiman,* 466 Mich at 428.

Here, the jury considered the identification evidence in light of defendant's arguments that the confidential informants were compromised by their personal incentives to cooperate with the prosecution, and that the police witnesses were not well acquainted with defendant and were removed from the transactions, and determined that the identifications were credible. The identification evidence, and reasonable inferences from it, were sufficient to identify defendant as distributing narcotics as charged beyond a reasonable doubt.

## V.  CUMULATIVE ERROR

Defendant argues that "the combination of the trial court's rulings, the prosecutor's misconduct, the destruction of evidence and the misstatements of the law denied him a fair trial where he could adequately set forth his defense of mistaken identity." "The cumulative effect of several minor errors may warrant reversal even where the individual errors in the case would not warrant reversal." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). However, as set forth above, defendant's arguments were unavailing, and therefore, his cumulative error argument must fail.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford