*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ELZRA JOHNSON,

Defendant-Appellant.

UNPUBLISHED
February 25, 2020

No. 344391
Wayne Circuit Court
LC No. 16-005623-01-FC

Before: REDFORD, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals by right his convictions by a jury of second-degree murder, MCL 750.317, assault with intent to murder, MCL 750.83, felon in possession of a firearm, MCL 750.227f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b(b). The trial court sentenced defendant as a fourth offense habitual offender, MCL 769.12, to concurrent prison terms of 55 to 60 years for the second-degree murder conviction, 20 to 30 years for the assault conviction, 10 to 20 years for the felon in possession conviction, and to a consecutive term of 5 years for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

On June 1, 2016, Ashley Holloway drove Jason Durham to a party store, parked in an adjacent driveway, and Durham purchased some items and then returned to the car. As Holloway attempted to drive away she nearly collided with defendant's car which blocked her departure. Defendant's passengers, Milecia Talley and Shenika Pentecost, got out of the vehicle to confront Holloway, and they exchanged expletives. Durham saw defendant, the driver of the other car, brandish a gun. Durham ducked and told Holloway to do the same. Holloway drove around defendant's vehicle and Durham heard a shot and then four or five more shots. Holloway failed to duck and was struck by a bullet. Bullets shattered Holloway's back window glass and put bullet holes in Holloway's vehicle. Holloway slumped over bleeding from her head. Durham stopped the vehicle and called 911. Holloway died and the police arrested defendant a few days after the shooting.

-1-

## II. DISCOVERY VIOLATION

Defendant first argues that he was denied his constitutional rights when the police failed to preserve Holloway's vehicle for defendant's inspection. This Court reviews constitutional claims de novo. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003).

The United States Constitution provides criminal defendants with the right "to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). To demonstrate a due-process violation involving the failure to preserve evidence, a "defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017) (quotation marks and citation omitted). Unless it is demonstrated that the police acted in bad faith, the failure to preserve evidence that is merely "potentially useful" is not a due-process violation. *People v Huttenga*, 196 Mich App 633, 642; 493 NW2d 486 (1992), citing *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). Defendant bears the burden to demonstrate that "the evidence was exculpatory or that the police acted in bad faith." *Dickinson*, 321 Mich App at 16 (quotation marks and citation omitted).

Defendant moved to dismiss his case on the ground that the police released the vehicle to its owner before his expert could inspect it. Defendant claimed that plaintiff was informed at a hearing that defendant intended to inspect the vehicle but he acknowledged that the vehicle already had been released at the time of that January 2017 hearing. The trial court found that no order to preserve the vehicle for inspection had been entered. The record indicates that Holloway's vehicle was taken to Gene's Towing on June 1, 2016, and stored there available for inspection by the parties. Detroit Police Officer Matthew Kurik testified that he thought it would be available for inspection by the parties until the end of the case. Detroit Police Detective Scott Shea, however, released the vehicle to Holloway's mother five or six months after the shooting because she persistently requested the vehicle. Police examined the vehicle twice. At the time of the vehicle's release, no one had requested further access to the vehicle. Detective Shea testified that he did not have a reason to retain the vehicle because it no longer had any evidentiary value and no rule prevented releasing it. He learned after the release that defendant might have an expert who would want to inspect the vehicle.

In denying defendant's motion to dismiss, the trial court noted that the case file did not contain an order appointing a private investigator or a proof of service to the prosecutor of notice directing him to preserve the evidence. The trial court found that no evidence established that the prosecution intentionally suppressed the evidence, that no evidence established that the police were required by any order to retain the vehicle, and that defendant would have the opportunity to cross-examine the prosecution's witness pertaining to evidence regarding the vehicle.

Defendant has not demonstrated that the prosecutor acted in bad faith by failing to preserve Holloway's vehicle until defendant's expert could inspect it, or that defendant was denied access to exculpatory evidence. Mere negligence does not demonstrate bad faith. *Youngblood*, 488 US at 58. Generally, bad faith requires a showing of malicious or intentionally wrongful conduct. See *Flones v Dalman*, 199 Mich App 396, 401; 502 NW2d 725 (1993). Detective Shea waited several months to release the vehicle and lacked awareness of any intent by defendant to inspect it. No

record evidence reveals defendant's intent to inspect the vehicle before its release. Defendant, therefore, has not met his burden to establish that the police acted in bad faith.

Defendant argues that the police intentionally destroyed exculpatory evidence by failing to preserve Holloway's vehicle. He claims that, because the prosecution presented inculpatory evidence from the vehicle after inspecting it twice, the vehicle may have also provided exculpatory evidence. However, without demonstrating that the police acted in bad faith, the failure to preserve evidence that is merely "potentially useful" is not a due-process violation. *Huttenga*, 196 Mich App at 642. Defendant asserts that one of the officers who inspected the vehicle concluded, contrary to the other inspector, that one shot was made from in front of the vehicle. Defendant argues that this evidence indicated that there may have been another shooter. However, to establish that his due-process rights were violated by a failure to preserve exculpatory evidence, defendant must show that the vehicle was "exculpatory evidence that would have exonerated [him]." *Dickinson*, 321 Mich App at 16-17. Exculpatory evidence is evidence that would raise a reasonable doubt about the defendant's guilt. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). Forensic evidence established that the bullet that killed Holloway struck her in the rear of her head. Evidence also established that the back window of her vehicle was shot out. Evidence also established that other bullet damage existed in the back and side of the vehicle. This evidence established that the fatal shot did not originate from the front of the vehicle. Even though the experts provided contrasting testimony regarding the bullet damage to the front bumper, no other evidence from the inspections of the vehicle or eyewitness testimony established the existence of a second shooter. At most, further examination by defendant of Holloway's vehicle regarding the trajectory of the bullets may have been potentially useful, but not exculpatory.

Apart from arguing that plaintiff failed to preserve evidence, defendant asserts that plaintiff suppressed the evidence of Holloway's vehicle. Under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the prosecutor must give the defendant any favorable evidence that is material to guilt or punishment. *Brady* applies when the state fails to disclose evidence; it does not apply when the state fails to preserve it for later testing. *Youngblood*, 488 US at 57-58. Because defendant's claim asserts the failure to preserve Holloway's vehicle for later inspection, rather than a failure to disclose the evidence, defendant cannot establish a *Brady* violation.

De novo review of the record establishes that the police did not deny defendant his constitutional rights by failing to preserve Holloway's vehicle for his inspection. Accordingly, defendant is not entitled to reversal of his convictions.

### III. OUTBURST AND EVIDENCE OF A THREAT

Defendant next argues that the trial court denied him a fair trial when it denied his motion for a mistrial following an outburst in the gallery and by prosecutorial misconduct for soliciting testimony from Talley that she had been threatened. We review a trial court's decision regarding a motion for a mistrial for an abuse of discretion. *People v Ortiz-Kehoe*, 237 Mich App 508, 513; 603 NW2d 802 (1999). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195

(2016). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (quotation marks and citation omitted).

A defendant tried by a jury has a right to a fair and impartial jury. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). Jurors may only deliberate on evidence that is presented to them in open court, and considering extraneous facts not introduced in evidence deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment, US Const, Am VI. *Id*.

In this case, the medical examiner displayed an autopsy photo at trial and Holloway's mother exclaimed from the gallery, "I look at my daughter. You f**king bastard, look at my daughter." The trial court excused the jury and she again said, "Look at my daughter." The record is not clear whether the jury heard the second statement. At the conclusion of the medical examiner's testimony, the trial court provided the jury the following curative instruction that they should not consider the outburst as evidence:

> Ladies and gentlemen, the spectators have promised or assured my deputy that there won't be any further outburst. It's totally understandable when the victim's mother sees an autopsy photo of her daughter I guess, but you just have to bear in mind that that's not evidence the defendant is guilty or that he committed the crimes he's charged with. Well, the inescapable fact that there's a very distraught mother involved, so, just so you know that hopefully that will not happen again.

The trial court later denied defendant's motion for a mistrial, concluding that the outburst was understandable, and because it provided a cautionary instruction to the jury. The trial court invited defendant to request an additional jury instruction at the conclusion of the trial.

A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant "and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (citation omitted). A trial court should grant a mistrial with caution, *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995), and only when the error is "so egregious that the prejudicial effect can be removed in no other way." *People v Gonzalez*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

Defendant argues that the outburst prevented the jury from being impartial. The trial court did not question the individual jurors regarding their remaining impartial despite the words from Holloway's mother. However, defendant has not established a substantial possibility that her unsolicited and brief statement affected the jury's verdict. *Budzyn*, 456 Mich at 88-89. To prove that an extraneous influence affected the verdict, a defendant must demonstrate that it substantially related to a material aspect of the case and that a direct connection existed between the extrinsic material and the adverse verdict. *Id*. In this case, defendant has not shown that Holloway's mother's outburst provided extraneous information that impacted the jury's determination. Where the motion for a mistrial is based on an unsolicited outburst, it should be granted only where the comment is so egregious that the prejudicial effect cannot be cured. *Gonzalez*, 193 Mich App at

266. In this case, nothing indicates that Holloway's mother's brief outburst had a prejudicial effect on the jurors. The record reflects that the trial court took immediate action to control the courtroom and limit any effect by instructing the jury to disregard the comment. Further, for defendant's benefit, the trial court offered to further instruct the jury in its final jury instructions. Jurors are presumed to follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 299 (1998). And instructions are presumed to cure most errors. *Abraham*, 256 Mich App at 279. The record does not reflect that the jurors in this case disregarded the trial court's instructions. Therefore, the trial court did not abuse its discretion by denying defendant's motion for a mistrial

Defendant also contends that the prosecutor committed prosecutorial misconduct by questioning Talley about whether she had been threatened. "The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id.* at 63-64. Here, Talley testified on cross-examination that, although she testified as a witness because she wanted to tell the truth, she was subject to a subpoena and the police had to locate her and transport her to trial when she did not willingly appear. On redirect examination, the prosecutor clarified that Talley did not want to testify and that she had received threats.

"A defendant's threat against a witness is generally admissible" because it is relevant to show a consciousness of guilt. *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). However, in *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982), citing *People v Long*, 144 Mich 585; 108 NW 91 (1906), this Court indicated that evidence of a threat may not be relevant unless it is accompanied by testimony demonstrating that the defendant made or approved of the threat. In *People v Walker*, 150 Mich App 597, 603; 389 NW2d 704 (1985), this Court stated that, without a testimonial foundation, "the prosecution cannot be permitted to create the illusion by innuendo that witnesses are being intimidated by the defense." Talley's statement that she received threats was not accompanied by any testimony about the source or nature of the threats. In *People v Johnson*, 174 Mich App 108, 112; 435 NW2d 465 (1989), this Court held that a threatening letter possibly sent by the defendant to witnesses "was relevant in evaluating their testimony" because "the interest or bias of a witness or his relationship toward the parties to an action is a proper factor to consider on the issue of credibility." Additionally, in *People v Clark*, 124 Mich App 410, 412-413; 335 NW2d 53 (1983), this Court stated that a witness's testimony about a threat from the defendant's brother was admissible to "explain the prior inconsistent statement of the witness." In this case, during cross-examination defendant challenged Talley's motivation to testify. Consequently, it was not improper to elicit testimony from her that explained her motivation to testify. Evidence that she had been threatened related to her credibility as a witness and did not deny defendant a fair trial. Further, three witnesses, including occupants of both cars involved in the shooting, testified that defendant shot multiple times at Holloway's vehicle. Evidence established that Holloway suffered a gunshot to the back of her head and that a bullet damaged the rear window. The prosecution presented to the jury substantial evidence from which they could determine defendant's guilt beyond a reasonable doubt. Evidence that Talley had been threatened regarding her testimony would not have been outcome-determinative. Defendant has failed to establish that the prosecutor committed prosecutorial misconduct.

## IV. SENTENCING

Defendant argues that his sentence was unreasonably disproportionate. We disagree.

Our review of a sentence is precluded where a defendant's sentence is within the appropriate guidelines sentence range unless the trial court relied upon a scoring error or inaccurate information in determining the sentence, and "the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand." MCL 769.34(10). See *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). The trial court imposed upon defendant a minimum sentence that fell within the statutory guidelines minimum sentence range of 315 months (26.25 years) to 1050 months (87.5 years). The trial court sentenced defendant to serve a minimum prison sentence of 55 years, well within the guidelines range. Therefore, defendant's argument lacks merit and he is not entitled to resentencing. See *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

## V. MISCONDUCT DURING OPENING STATEMENT

Defendant next argues that the prosecutor denied him a fair trial when, during his opening statement, he said:

> You'll hear from [Talley] that as they were driving away, Ms. Pentecost asked the defendant why did you do that. We were, we were just gonna fight. We could have just fought. And he said that he had some anger that he had to get out, and he put on a CD and played it. Uh, a tune where the person says I don't fight mother f'ers, I shoot mother f'ers. And he says that's the answer.

"A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger* (*On Remand*), 278 Mich App 210, 241; 749 NW2d 272 (2008); *People v Fisher*, 193 Mich App 284, 291; 483 NW2d 452 (1992). A defendant "has a right to a fair and impartial jury" with jurors who only deliberate about the "evidence that is presented to them in open court." *Budzyn*, 456 Mich at 88.

Defendant argues that the prosecutor did not know whether Pentecost would testify regarding defendant's statements and asserts that no admitted evidence indicated that defendant made such statements. The prosecutor stated that Talley, rather than Pentecost, would testify about what defendant said in response to Pentecost questioning him. At trial, Talley testified that after the shooting she sat in the car with defendant and Pentecost, and both she and Pentecost asked defendant why he shot the gun. Talley recalled that defendant responded by stating that he had a lot of anger, and then played music in which the singer stated that he shoots people instead of fighting them. Talley testified that she agreed with Pentecost that they should have just fought and she thought that the song defendant played was his response to her question. The testimony that the prosecutor told the jury in opening that he would present was largely consistent with Talley's testimony. To the extent that the opening statement expressed more than witnesses delivered, "when a prosecutor fails to prove allegations made during his opening statement, reversal is not required in the absence of bad faith or prejudice to the defendant." *People v Wolverton*, 227 Mich

App 72, 75-76, 574 NW2d 703 (1997). In this case, defendant has failed to establish that the slight discrepancy prejudiced defendant because the evidence that the jury considered from Talley's testimony did not significantly differ from the evidence that the prosecutor promised.

Defendant argues that the prosecutor acted in bad faith because he knew that it was unlikely that Pentecost would testify since she had recanted her statement to the police. However, the prosecutor's opening statement did not make any reference to Pentecost testifying. The prosecutor indicated that Talley would testify and she did. Further, plaintiff attempted to call Pentecost as a witness but she, through counsel, asserted her right to not provide self-incriminating testimony. Defendant has failed to establish bad faith or prejudice.

Defendant further argues that the evidence promised by the prosecutor was inadmissible hearsay. "Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted." MRE 801(c); *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). Hearsay is generally not admissible but may be admitted if it meets the requirements of one of the hearsay exceptions set forth in the Michigan Rules of Evidence. MRE 802; *Stamper*, 480 Mich at 3. Talley's recounting that Pentecost asked a question was not a hearsay statement because it was not an assertion capable of being true or false. *People v Jones*, 228 Mich App 191, 204; 579 NW2d 82 (1998). Additionally, defendant's statements that were reported by Talley were not hearsay because they were an admission by a party-opponent. *People v Smith*, 120 Mich App 429, 434; 327 NW2d 499 (1982), citing MRE 801(d)(2)(A). Accordingly, defendant's claims of error in this regard lack merit.

## VI. IDENTIFICATION

Defendant argues that Durham's and Patrick Walls's, a customer at the party store, in-court identifications of defendant were unreliable. He claims that his trial counsel provided ineffective assistance by failing to suppress their identifications. Defendant failed to preserve these claims of error. Unpreserved claims are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763. Claims of ineffective assistance of counsel that are unpreserved are reviewed for errors apparent on the record. *Unger*, 278 Mich App at 253. We review de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel. *Id*. at 242.

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), citing *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). A defendant's due-process rights are violated by the use of an "unduly suggestive" identification procedure. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), citing *Stovall v Denno*, 388 US 293, 302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967). A procedure used in lineup or photographic identification is unduly suggestive in violation of due-process guarantees where it produces "a substantial likelihood of misidentification." *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013); *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

Durham gave confused testimony regarding an array of six photographs that police showed him the day after the shooting. Detective Shea could not recall whether Durham picked out anyone but said that Durham did not pick defendant as the person who he thought was the shooter. Nevertheless, at defendant's preliminary examination Durham testified that he was able to identify

defendant because he was able to view the side of his face. Although defendant had tattoos on both sides of his face, Durham did not describe the tattoos on the left side of defendant's face or his beard to the police. Durham identified defendant and his female companion from surveillance video from the liquor store. Walls identified defendant in court for the first time as the man he saw get into the other vehicle involved in the incident. Walls acknowledged that he did not tell the police that defendant had face tattoos.

Where a witness does not identify a defendant in a lineup, the witness's in-court identification is "a credibility issue that [is] properly before the jury to determine." *People v Barclay*, 208 Mich App 670, 675-676; 528 NW2d 842 (1995), citing *People v Laidlaw*, 169 Mich App 84, 92; 425 NW2d 738 (1988). Defendant argues that Durham and Walls did not have a sufficient independent basis on which to identify defendant in court. However, where "there was no impropriety in the [] pretrial identifications of defendant, there was no need to establish an independent basis for an identification." *People v McElhaney*, 215 Mich App 269, 288; 545 NW2d 18 (1996). "The need to establish an independent basis for an in-court identification only arises where the pretrial identification is tainted by improper procedure or unduly suggestive comments." *People v Laidlaw*, 169 Mich App 84, 92; 425 NW2d 738 (1988). In this case, defendant has not established any improper procedure or unduly suggestive comments by the police to call into question Durham's or Walls's identifications.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To prove an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007).

Defendant argues that his trial counsel provided ineffective assistance by failing to challenge Walls's or Durham's identifications of defendant. A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). In this case, no basis existed on which to exclude the witnesses' in-court identifications of defendant. Defendant's trial counsel cross-examined Durham and Walls regarding their respective identifications and provided the jury evidence from which it could determine the credibility of their identifications. Defense counsel's performance, therefore, did not fall below an objective standard of professional conduct. Therefore, defense counsel did not provide defendant ineffective assistance.

Affirmed.

/s/ James Robert Redford
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto